**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JOECEPHUS MITTS, #N-83084,**     ) | |
|     ) | |
|         **Plaintiff,**     ) | |
|     ) | |
| **vs.**     ) | **CASE NO. 11-cv-398-JPG** |
|     ) | |
| **OBANDINA,** *et al.,*     ) | |
|     ) | |
|         **Defendants.**     ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Joecephus Mitts, an inmate in Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.  Many of the events giving rise to his claim occurred while Plaintiff was housed at Pinckneyville Correctional Center ("Pinckneyville").  Plaintiff is serving 30-year and six-year sentences for two counts of aggravated criminal sexual assault, and 15 years for attempted armed robbery.  This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**<u>The Complaint</u>**

Plaintiff suffers from a type of cancer affecting the skin: mycosis fungoides.[1] He alleges

---

[1] According to WebMD, "Mycosis Fungoides is a rare form of T-cell lymphoma of the skin (cutaneous); the disease is typically slowly progressive and chronic. In individuals with Mycosis Fungoides, the skin becomes infiltrated with plaques and nodules that are composed of lymphocytes. In advanced cases, ulcerated tumors and infiltration of lymph nodes by diseased cells may occur. The disorder may spread to other parts of the body including the gastrointestinal system, liver, spleen, or brain." Http://www.webmd.com/cancer/mycosis-fungoides-10856 (last visited May 23, 2012).

that at various times during his incarceration, he was denied necessary medical treatment for this ailment, and at other times his treatment was delayed.  His symptoms have worsened due to the delay and denial of treatment.

While Plaintiff was in Pinckneyville, he had a physical examination by Defendant Doctor Obandina in April 2009.  Plaintiff requested treatment for his condition, and his medical records from his prior treatment at a private hospital were ordered (Doc. 1, p. 5; Doc. 1-1, p. 2).  In October 2009, Plaintiff inquired whether his medical records had arrived, and was told they had come in July 2009.  Thereafter, Plaintiff saw Defendant Obandina again, and was told by him that care would be arranged, subject to the approval of Defendant Dennis Larson, the regional medical director for Wexford Health Sources.  Wexford Health Sources is the company contracted to provide medical services to inmates in the Illinois Department of Corrections ("IDOC").

Plaintiff filed grievances in January and March 2010, seeking the treatment that had still not been provided.  Defendant Crisey Fenton (Pinckneyville health care administrator) scheduled Plaintiff to see an outside dermatologist, whom he saw in March 2010.  This dermatologist prescribed medication for Plaintiff, but when Plaintiff tried to get the prescription filled, Defendant Doctor Jill Wahl informed him that this medication was not available through the prison pharmacy.

Plaintiff filed a grievance on April 29, 2010, over the availability of the prescribed medicine.  He claims he never received the proper medication (Doc. 1, p. 6).  Further, he states he was told that "no outside medical treatment" would be provided until July 20, 2010 (it is not clear whether Plaintiff is referring to his prescribed medication or some other treatment).

Plaintiff asserts that Defendant Larson and Defendant Doctor Louis Schicker (the IDOC Medical Director) delayed his treatment due to budgetary concerns.  On June 7, 2010, he was informed by Defendant Doctor Wahl that his request for an outside consultation had been rejected by Defendants Brown, Fenton, and Roberts, due to cost.

Plaintiff further alleges that after a biopsy was performed on July 20, 2010, on his waistline and ankle (See Doc. 1-1, p. 4), he contracted MRSA (Methicillin-resistant Staphylococcus aureus).  He blames Defendants Brown and Wahl for causing him to develop this infection, because they failed to provide appropriate bandage changes.

Because of his skin condition, a specialist who had treated Plaintiff earlier recommended he not use any antibacterial or deodorant soap.  In order to avoid the irritation to his skin, on July 26, 2010, Plaintiff requested Dove soap, which was not available in the commissary.  Defendant Brown initially denied his request, but ultimately approved it on November 29, 2010 (Doc. 1, p. 7, Doc. 1-1, pp. 19-20).

On September 19, 2010, Defendant Larson informed Plaintiff that he would be receiving UVB light therapy in the prison (Doc. 1, p. 6).  It appears that he continued to undergo this treatment throughout the remainder of his stay in Lawrence.

Finally, Plaintiff was transferred to Menard in January 2011.  He complains that his prescription was not filled by Defendant Nikki Malley (the Menard Health Care Administrator), despite his requests.  He alleges that he was given the UVB light box treatment, but states that Defendant Doctor Magid Fahim refused to provide him with a higher chair to use during the treatment, in order to prevent the light from burning his face (Doc. 1, p. 7).  He complains that Defendant Fahim is not properly trained to provide this treatment, and he should instead be sent

to an outside dermatologist.  Plaintiff's exhibits show that on January 26, 2011, Plaintiff was provided with a cover for his head during the light treatments, was given cream, and would be supplied with Dove soap per a doctor's prescription (Doc. 1-1, p. 13).

Plaintiff requests compensatory and punitive damages, and an injunction requiring Defendants Larson and Schicker to obtain treatment for Plaintiff from an outside physician.

## Discussion

### Introduction - Deliberate Indifference

Generally, an inmate's dissatisfaction with the medical care he receives in prison does not state a constitutional claim for deliberate indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).  However, in certain instances, a constitutional claim may lie if a prison official's actions amount to a failure to treat a serious medical condition.

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999).  Deliberate indifference involves a two-part test.  The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).  However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate;  it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . .  Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may

conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

Without question, Plaintiff's cancer diagnosis qualifies as an objectively serious medical need under *Gutierrez.* It has caused him pain, and has the potential to affect vital organs beyond the skin. The condition requires treatment. The remaining issue is whether Plaintiff has sufficiently alleged deliberate indifference on the part of the various Defendants.

To show deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer,* 511 U.S. at 837. The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady,* 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"). The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008);

*Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or techniques).  However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur.  *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (discussing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)).

A delay in providing medical treatment "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."  *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (discussing *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976); *Gayton v. McCoy,* 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder,* 478 F.3d 827, 832 (7th Cir. 2007) ("a plaintiff's receipt of *some* medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition")).

**Defendant Dr. Obandina**

According to the complaint, Plaintiff's medical records from his earlier diagnosis and treatment outside of prison were needed in order for him to be treated by Defendant Obandina. After the initial three-month delay for the records to arrive, Defendant Obandina did nothing until Plaintiff inquired about the records in October 2009.  Plaintiff alleges that he still received no treatment for his condition until nearly one year later, in September 2010.  He attributes at least some of this delay, and worsening of his symptoms, to Defendant Obandina's inaction.  At this point in the litigation, it cannot be determined what responsibility Defendant Obandina may have had in obtaining the necessary treatment, or whether he acted with deliberate indifference to the risk that Plaintiff's condition would worsen.  Therefore, the claim against Defendant

Obandina shall receive further consideration.

**Defendant Crisey Fenton**

Defendant Fenton was the person who scheduled Plaintiff to visit a dermatologist outside the prison, in early 2010. From the allegations in the complaint and attachments, it appears that circumstances beyond her control caused the delay in arranging this visit. Plaintiff's January 5, 2010, appointment was cancelled by the dermatologist (Doc. 1, p. 6; Doc. 1-1, p. 1). His next appointment had to be rescheduled due to Plaintiff being temporarily sent to another location, and the dermatologist's office could not set another appointment until March 2010 (Doc. 1-1, p. 10). Thus, the allegations do not state a claim against Defendant Fenton for deliberate indifference for delaying this specialist appointment.

Plaintiff's other allegation against Defendant Fenton is that she, along with Defendants Brown and Roberts, denied his request in June 2010 for a consultation with an outside specialist. As to this claim, Plaintiff does not indicate what the purpose of this consultation would have been, or what type of specialist he needed to see. By his own admission, he had recently seen a dermatologist in March 2010, who had prescribed medication for him.

Mere disagreement with the chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th

Cir. 1997).  Further, a difference of opinion between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference.  *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir.  2006); *see also Garvin*, 236 F.3d at 898.

Accordingly, Plaintiff has failed to state a claim against Defendant Fenton upon which relief may be granted, and she shall be dismissed from this action without prejudice.

**Defendant Janet Roberts**

Plaintiff's only allegations against Defendant Roberts is that she, along with Defendants Fenton and Brown, denied his request for a consultation with an outside specialist in June 2010. As noted above, Plaintiff gives no further information as to this requested consultation, and he had already seen the outside dermatologist in March 2010.  As discussed in connection with the claims against Defendant Fenton, Plaintiff likewise fails to state a claim upon which relief may be granted against Defendant Roberts.  Therefore, Defendant Roberts shall also be dismissed from this action without prejudice.

**Defendant Christine Brown**

As with Defendants Fenton and Roberts, Plaintiff has failed to state a claim against Defendant Brown for the June 2010 denial of the consultation with an outside specialist. However, Plaintiff makes two other claims against Defendant Brown.  First, he alleges that Defendant Brown (along with Defendant Wahl) failed to properly care for his biopsy wounds, where he then contracted a MRSA infection.  Secondly, he states that Defendant Brown denied his request for Dove soap for several months.

Plaintiff gives few specifics regarding the follow-up to his biopsy.  He claims that he contracted the infection within a week of having the procedure.  It is possible that the alleged

failure to "provide the appropriate bandage change needed" (Doc. 1., p. 7) was mere negligence or even malpractice, neither of which would rise to the level of a constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). However, if Plaintiff can establish that Defendant Brown deliberately disregarded the obvious risk that a biopsied area could become infected if not properly cared for, he may be able to prevail on his constitutional claim. At this early stage, it cannot be determined whether Defendant Brown had the requisite subjective intent to sustain a claim for deliberate indifference to a serious medical need. Therefore, this portion of Plaintiff's claim shall receive further review.

Finally, Plaintiff claims that Defendant Brown was deliberately indifferent to a serious medical need when she denied his request for Dove moisturizing soap in order to avoid aggravating his skin condition by using the standard-issue antibacterial or deodorant soap. Defendant Brown did ultimately approve his request for special soap on November 29, 2010, but Plaintiff had originally made his request on July 26, 2010. Whether that four-month delay in receiving a medically necessary item constituted deliberate indifference is not capable of being determined at this stage of the litigation, and thus shall also receive further review.

**Defendant Dr. Jill Wahl**

Plaintiff claims that Defendant Wahl was responsible, along with Defendant Brown, for failing to provide bandage changes for his biopsy areas, leading to his MRSA infection. For the reasons noted above in the discussion of claims against Defendant Brown, this allegation against Defendant Wahl shall also receive further review.

Plaintiff's other statements regarding Defendant Wahl do not indicate any other potential violations of his constitutional rights. He states that she informed him on June 7, 2010, that other

Defendants (Brown, Fenton, and Roberts) had denied his request for an outside consultation; but does not indicate that she had any part in making that decision.  As noted above, Plaintiff has failed to state a claim against Defendants Brown, Fenton, or Roberts on this basis.  Defendant Wahl was also the person who informed Plaintiff, after he obtained a prescription from the outside dermatologist, that the prescribed medication was not available through the prison pharmacy.  However, again, Defendant Wahl is not alleged to have had any part in preventing Plaintiff from obtaining his prescription.

To summarize, the only constitutional claim against Defendant Wahl that merits further review is that she may have been deliberately indifferent in improperly treating his biopsy wounds.  Plaintiff's other allegations against her fail to state a claim.

### Defendants Dr. Dennis Larson and Dr. Louis Shicker

Plaintiff claims he received no treatment for his mycosis fungoides from April 2009, when he first saw Defendant Obandina, until he began receiving the UVB light therapy in September 2010.  He alleges that he began to file grievances in January 2010, seeking treatment, and in April 2010 filed a grievance over the failure to provide him with the medicine prescribed by the outside dermatologist.  Plaintiff states that Defendant Larson, who is the Regional Medical Director for Wexford Health Sources, and Defendant Shicker, who is the Medical Director for the Illinois Department of Corrections, had to approve his requests for necessary care.  Thus, they were responsible for the delay in obtaining his prescription and any other treatment.

At the pleadings stage, Plaintiff has sufficiently alleged deliberate indifference on the part of Defendants Larson and Shicker to merit further review of his claims against them.

**Defendant Nikki Malley**

After Plaintiff was transferred to Menard, he needed to have his prescription filled, but Defendant Malley, the Health Care Administrator, failed to fill the prescription.  It is not clear whether Plaintiff ever received his prescribed medication, or if he did, how long he had to wait to receive it.

The failure to provide medication that has been prescribed by a physician to treat a serious medical problem may amount to deliberate indifference, as would a delay in giving necessary medication.  Thus, Plaintiff's claim against Defendant Malley shall receive further consideration.

**Defendant Dr. Magid Fahim**

Plaintiff filed a grievance on January 18, 2011, against Defendant Fahim, complaining that when Plaintiff received his light box treatments, Defendant Fahim refused to take measures to protect Plaintiff's face from the burning effects of the UVB light.  Specifically, he requested to have a higher chair to use during the treatments.  He further complains that Defendant Fahim is not trained or licensed to perform the light treatment, and requests that he be sent to an outside specialist to receive his treatments in the future.  Plaintiff's exhibits disclose that on January 26, 2011, eight days after filing the grievance, he was provided with a cover to use for his head during the light treatments.  Plaintiff does not claim to have actually suffered any burns from the light treatment prior to receiving the head cover.

Plaintiff's complaint does not establish that he sustained any injury or harm from the manner in which Defendant Fahim provided the UVB light treatments.  Measures were taken soon after Plaintiff filed his grievance, to mitigate the risk of burns.  The circumstances described

by Plaintiff do not outline a claim against Defendant Fahim for deliberate indifference upon which relief may be granted.  Furthermore, even if he were to state a constitutional claim, Plaintiff cannot dictate his own treatment or choose his medical provider.  *See Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques).  Accordingly, the claims against Defendant Fahim shall be dismissed without prejudice.

**Defendant Roberta Fews**

Finally, Plaintiff makes no allegations against Defendant Fews, other than his statement that she is "over the Administrative Health Care of IDOC" and she "did not take matter[s] in her o[w]n hands of her o[w]n department about Plaintiff['s] medical issue" (Doc. 1, p. 7).

It appears that Plaintiff may be attempting to assert a claim against Defendant Fews due to her supervisory role over other Defendants.  If so, he cannot sustain his claim against her. "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'"  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).  *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981).  Plaintiff does not allege that Defendant Fews was in any way personally responsible for the delay or denial of treatment for his condition.  Accordingly, she shall be dismissed from this action without prejudice.

**Disposition**

IT IS HEREBY ORDERED that Plaintiff's complaint fails to state a claim upon which relief may be granted against Defendants **FENTON, ROBERTS, FEWS,** and **FAHIM.** Therefore, these Defendants are **DISMISSED** from this action without prejudice.

IT IS FURTHER ORDERED that the Clerk of Court shall prepare for Defendants **OBANDINA, WAHL, LARSON, SHICKER, MALLEY,** and **BROWN** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

IT IS FURTHER ORDERED that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be

filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or  counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 29, 2012**

_s/J. Phil Gilbert_
**United States District Judge**